JON FALLON, ESQ.
FALLON IP, LLC
317 MORRIS AVENUE
MOUNTAIN LAKES, NEW JERSEY 07046
508.735.1448 (DIRECT)
jfallon@fallonip.com (EMAIL)
*ATTORNEY FOR PLAINTIFF*
*Pro Hac Vice Admission Pending*

MASELLI MILLS & FORNAL, P.C.
By: Shawn D. Edwards, Esquire
The Stocking Works
301 S. State Street, Suite N201
Newtown, PA 18940
Ph: 267.914.7400
*sedwards@masellilaw.com*
*ATTORNEY FOR PLAINTIFF*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

-------------------------------------------------------X

**ANEJO GROUP, LLC;**

      **Plaintiff,**

    **v.**                                                                    **Civil Action No. _____**

**CHI YE T LU (AKA TIM LU);**
**JOHN SMITH, an individual; and**
**ABC COMPANIES;**

      **Defendants.**

-------------------------------------------------------X

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Añejo LLC (hereinafter "Anejo"), by and through its counsel, Jon Fallon, Esq.,

of Fallon IP, LLC and Shawn D. Edwards, Esquire of Maselli Mills & Fornal, P.C., complain

against Chi Ye T Lu (AKA Tim Lu). (hereinafter "Lu"), John Smith, and ABC Companies

1

(collectively "Defendants"), and alleges upon knowledge as to itself and otherwise upon information and belief as follows:

## NATURE OF THE ACTION

1. This is an action for (1) Civil Theft (Embezzlement), (2) Civil Theft (Misappropriation of Company Liquor License for Personal Gain), (3) Civil Theft (Fraudulent Sale of Equity), (4) Declaratory Judgment (Validity of Operating Agreement), (5) Breach of Contract (Operating Agreement), (6) Declaratory Judgment (Validity of Arbitration Settlement), (7) Tortious Interference with Contractual Relationship (Lease), (8) Tresspass, (9) Civil Theft (Embezzlement of Company Loan Funds), (10) Civil Theft (Embezzlement of Sales Revenue), (11) Civil Theft (Restaurant Property), and (12) Breach of Contract (Management Agreement).

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over all causes of actions set forth herein based upon 28 U.S.C. §§ 1332 because the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and pursuant to the supplemental jurisdiction of this Court for all non-federal causes of action under 28 U.S.C. § 1367.

2. This Court has personal jurisdiction over Defendants by virtue of, *inter alia*, (a) Defendant Lu being a Pennsylvania resident; (b) commission of tortious acts by all Defendants within the State of Pennsylvania and within this Judicial District; (c) regular and continuous transaction of business, including the tortious acts complained of herein, within the State of Pennsylvania and within this Judicial District; and (d) the amount in controversy exceeding $75,000.

3.    Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) and (c).

## THE PARTIES TO THE COMPLAINT

4.    Plaintiff Anejo is a New York Limited Liability Company with its principal place of business at 668 10th Avenue, New York, New York, 10036.

5.    Defendant Lu is a Pennsylvania resident, believed to be residing at 1425 Darby Road, Havertown, Pennsylvania, 19083.

6.    Defendant John Smith is a fictitious persons or entity whose present identity and address is unknown, who has also violated Plaintiffs' rights as set forth herein, or who assisted, conspired, or otherwise cooperated with the other Defendants in the acts complained of herein.

7.    Defendants ABC Companies are fictitious entities whose present identity and address is unknown, who have also violated Plaintiffs' rights as set forth herein, or who assisted, conspired, or otherwise cooperated with the other Defendants in the acts complained of herein.

## BACKGROUND

8.    Plaintiff Anejo owns and operates several successful, high-end Mexican restaurants and tequila bars in  New York and New Jersey since as early as  2012.

9.    In or around 2017, Anejo was approached by Defendant Lu with the idea of expanding Anejo's successful restaurant brand into Philadelphia, Pennsylvania.

10.   Mr. Lu represented that he had created a limited liability company, UC Hospitality Group, LLC ("UCH") and was in the process of obtaining a lease (the "Lease") to a commercial restaurant space at 1001 N. Second Street, Philadelphia, Pennsylvania,

19123.

11. After months of negotiation, the Parties finally came to an agreement on terms to operate a restaurant under Anejo's brand in Philadelphia ("Anejo Philadelphia"), and entered into an Operating Agreement for UCH on February 27, 2019 ("Operating Agreement"), which included an appended Management Agreement ("Management Agreement") governing the day-to-day operation of the proposed restaurant, and an IP License Agreement governing the use of the Anejo brand and goodwill for the proposed restaurant. The Operating Agreement, and the appended Management Agreement and IP License Agreement are attached hereto as *Exhibit A*.

12. While Defendant Lu had created UCH as an individual member, Lu entered into the Operating Agreement as one of the "Founders" (as used in the Operating Agreement), which also included his business partner John Chung ("Chung"). Lu and Chung were to form a limited liability company for purposes of their interests, as represented in the definition of "Founders" in the Operating Agreement, and used the name "NEWCO LLC" in the Operating Agreement. Defendant Lu signed the Operating Agreement on behalf of NEWCO LLC.

13. The Operating Agreement also contemplated a set of third party investors (the "Investors"), but no such investors existed in February 2019, at the time of signing the Operating Agreement.

14. The Anejo Philadelphia restaurant opened its doors in the Summer of 2020.

15. Upon information and belief, shortly before opening its doors, Defendant Lu began discussing potential investments with a group of investors. Lu offered them a percentage interest in UCH in exchange for capital contributions. On a date unknown,

in 2019, Lu successfully managed to convince a few investors (the "Investors") to invest in UCH, in the amount of $100,000 in exchange for a 20% interest in UCH.

16. Upon information and belief, Defendant Lu presented the Investors with documentation reflecting an investment into UCH, and their admission of the same as members into UCH.

17. Notwithstanding the fact the Operating Agreement required Anejo to agree to any additional members being added to UCH, Defendant Lu did not inform Anejo, nor seek its consent, to add the Investors to UCH. Moreover, Defendant Lu never deposited the Investors' funds into the UCH bank accounts. Upon information and belief, Defendant Lu kept the Investors' $100,000 equity payment for himself.

18. Anejo learned of the Investors months after Defendant Lu took their funds. Anejo notified Defendant Lu that the Investors never signed the UCH Operating Agreement, nor paid any funds to UCH, and that any such Investors must be a part of NEWCO LLC, and given profit distributions from NEWCO LLC's shares of UCH. Defendant Lu agreed to do so.

19. Upon information and belief, Defendant Lu never notified the Investors that they were not equity holders in UCH, and continued to lead them to believe they were members of the entity.

20. At no point in time did UCH provide direct profit distributions to the Investors. Upon information and belief, Defendant Lu paid the Investors through his own personal accounts, or the accounts of one of Lu's other businesses.

21. In 2020, Anejo learned for the first time that Defendant Lu and Chung had never actually formed NEWCO LLC, but rather existed as parties to the Operating Agreement

as a partnership using the fictitious name "NEWCO LLC," in an email from Defendant Lu. *See Exhibit B*. Defendant Lu and Chung indicated that despite the lack of filing their LLC, the Operating Agreement should still function as agreed, and in particular, the profit distributions from UCH should be paid out to Lu and Chung as if to NEWCO LLC.

22. The Parties continued to operate Anejo Philadelphia, under the UCH entity, pursuant to the Operating Agreement and Management Agreement from its opening through its eventual closure in May 2025.

23. On or about June 13, 2024, Anejo learned that Defendant Lu had made several withdrawals from the UCH operating account, each in the amount of $6,637.60, totaling approximately $26,550. Anejo asked Lu about these withdrawals, and Lu stated that he was "buying out" one of the Investors. Despite Anejo reminding Lu that the Investors were not part of UCH and should not be bought out with UCH funds, Anejo and Lu eventually agreed the Investor could be bought out using UCH funds, and his percentage interests in the NEWCO LLC distribution would be absorbed by UCH, and therefore would increase Anejo's ownership percentage accordingly.

24. Shortly after Anejo and Defendant Lu came to an agreement on the Investor buyout, Anejo learned from the Investor that Lu never paid him any funds, and that he was no longer interested in being bought out.

25. Anejo contacted Defendant Lu and demanded he return the $26,550 in funds, since the Investor no longer wished to be bought out. Defendant Lu acknowledged he would return the funds. Despite multiple reminders over the following months, Lu never returned the funds and kept them for his personal use. Anejo had later learned that the

increments in which Lu had taken out the funds were the monthly payment amount for a business loan Defendant Lu had taken out against UCH from a lender, Pirs Capital; the loan funds never being received by UCH, and believed to have been sent directly to Lu's personal accounts. Anejo has no knowledge of the exact amount of the loan, but it was believed to be at least $300,000.

26. On or around August 20, 2023, Anejo also learned that Defendant Lu was using the UCH liquor license (Restaurant Liquor License No. R-11558 (LID#64518)) ("Liquor License") for the benefit of his other restaurants. Lu had amended the Liquor License to allow for "off-site catering," which Anejo Philadelphia did not do. Anejo learned of Lu's usage of the Liquor License when UCH received a fine from the Pennsylvania Liquor Control Board ("PLCB") for off-site catering liquor sales at the location of one of Lu's other restaurants. *See Exhibit C, a copy of the citation from the PLCB.*

27. Anejo demanded Lu cease using the UCH Liquor License, specifically designated for use at the Anejo Philadelphia location on both the Liquor License itself, as well as the Operating Agreement. Lu refused to do so. Upon information and belief, Lu sold hundreds of thousands of dollars worth of alcohol at his other restaurants using the UCH Liquor License, without permission from Anejo or the PLCB. None of the profits from Lu's personal use of the Liquor License were ever paid to UCH for the use of such Liquor License.

28. On October 30, 2024, Anejo's counsel sent a demand notice to Defendant Lu and Chung at NEWCO, LLC, in accordance with the notice provisions in the Operating Agreement, notifying them of their breach of fiduciary duties as a managing member of UCH, and demanded a return of the stolen funds, and consideration for the use of

the UCH Liquor License.  *See Exhibit D*.  Defendant Lu responded via email on the same day with a tirade of baseless accusations (namely angry that Anejo was operating the restaurant in accordance with the Management Agreement), seeking a buyout of his interests, but refusing to address the stolen funds or usage of the Liquor License.

29.    With no potential settlement in sight, Anejo followed the process in the Operating Agreement, namely Section 11.7 (Arbitration), for removal of NEWCO LLC as a managing member of UCH, and to recover stolen funds.  On December 5, 2024, filed a Commercial Arbitration Demand with the American Arbitration Association (the "Arbitration").  *See Exhibit E, Arbitration Demand (Operating Agreement excluded, as appended as Exhibit A herein)*.

30.    NEWCO, LLC failed to enter any appearance in the Arbitration, and Anejo continued to proceed with the Arbitration coordinator and the selection of an Arbitrator on its own.

31.    Approximately a month or so after the initiation of the Arbitration, Mr. Chung reached out to Anejo to discuss the issue with the Arbitration and NEWCO LLC's potential removal from UCH.  As Chung was believed to be an innocent bystander in Defendant Lu's actions, and merely brought into these issues due to his partnership with Lu, using the fictitious name NEWCO, LLC, Chung had no interest in dragging out an Arbitration in which Chung knew of Lu's wrongdoings and knew such actions would warrant the removal of NEWCO, LLC.

32.    Chung retained counsel to represent NEWCO, LLC, and over the following weeks, a settlement was reached between Anejo and NEWCO, LLC, resolving the Arbitration by way of NEWCO, LLC surrendering all interests in and to UCH, and Anejo agreeing

to waive the accused liabilities, and to not pursue criminal proceedings for the same. *See Exhibit F*.

33. Shortly after Defendant Lu's failure to return the stolen $26,000, UCH became delinquent in its rent due under the Lease as the operating account had insufficient funds to pay the rent. Notice of delinquency was sent to UCH on October 15, 2024.

34. When the stolen funds were not returned, Anejo notified NEWCO, LLC that failure to return the stolen funds will render UCH unable to catch up in rent, and may lead to eviction. With no hopes of receiving the stolen funds back, Anejo sent out a capital call demand to NEWCO, LLC, pursuant to Section 6.2 of the Operating Agreement, dated January 6, 2025, seeking to cure back rent, and to ensure sufficient funds to pay rent moving forward. *See Exhibit G*. NEWCO, LLC never responded to the capital call.

35. With Anejo's efforts to remove NEWCO, LLC from UCH pending, which would grant Anejo complete ownership of UCH, Anejo reached out to the landlord in the Lease to explain its situation, the reasons for delinquency in rent payment, and its efforts to remove NEWCO, LLC in light of the same.

36. With an eviction proceeding pending in Philadelphia Municipal Court, the landlord indicated that if Anejo could remove NEWCO, LLC from UCH, it would be open to allowing Anejo to continue the lease and/or enter a new lease with Defendant Lu and Chung removed as personal guarantors.

37. Upon settlement of its Arbitration with NEWCO, LLC, Anejo notified the landlord that it was in a position to discuss continuing and/or modifying the lease to allow Anejo Philadelphia to remain at its location. Discussions continued over the following weeks

with the landlord, and terms were close to finalization when landlord's counsel notified Anejo's counsel that Defendant Lu filed a petition in the eviction proceeding. This petition caused landlord to cease all discussions with Anejo regarding the Lease.

38. Defendant Lu's petition in the eviction proceeding was filed on behalf of UCH, despite Lu's removal from UCH via the Arbitration Settlement. Upon learning this, on March 6, 2025, Anejo's counsel sent an email to Lu's counsel, William Morrin of the Law Offices of William B. Morrin, Esq., notifying him of the Arbitration, Lu's removal from UCH, and his need to withdraw his petition immediately. *See Exhibit H (excluding Operating Agreement and Arbitration documents attached in email)*.

39. Mr. Morrin responded to the email claiming that the Operating Agreement was invalid due to the fact Defendant Lu never formed "NEWCO, LLC," and therefore Defendant Lu always has been and remains the sole owner of UCH. Mr. Morrin further claimed Mr. Lu's ownership interests are reflected on the UCH Liquor License, showing his ownership interests of 100%. *See Exhibit I*.

40. In light of Mr. Morrin's absurd position, Anejo's counsel sent a letter to the Philadelphia Municipal Court advising the Court of the situation, and that Mr. Morrin does not represent UCH, as his authorization to file his petition did not come from an authorized member of UCH. *See Exhibit J*. In response, Anejo and counsel received notice from the court clerk to attend the next hearing in the eviction proceeding on April 8, 2025.

41. Anejo's officers and its counsel attended the April 8, 2025 hearing at the Philadelphia Municipal Court, along with Mr. Morrin, Defendant Lu, and counsel for the landlord. All parties attended a settlement discussion in a breakout room at the courthouse.

During the settlement discussion, landlord's counsel explained to Morrin and Lu that the landlord agreed with Anejo's position that NEWCO, LLC had been removed from UCH, and that if Morrin and Lu would withdraw their petition, the landlord would finalize its new lease terms with Anejo and Lu and Chung would be released from their personal guarantee under the lease. Landlord's counsel further notified Morrin and Lu that if the petition was not withdrawn, landlord would proceed with the eviction and seek judgment for the personal guarantee by Lu and Chung (approximately $250,000).

42. Despite such notice, despite the ability to walk away from lease with personal liability waived, and without the consent of Chung, Lu elected to maintain his petition, and the landlord proceeded with the eviction and seeking judgment for the personal guarantee.

43. After leaving the breakout room, all parties went back to the courtroom, awaiting being called by the Judge. Upon being called, the Court asked for appearances from Morrin and landlord's counsel, and allowed Anejo's counsel to address the court to explain the situation articulated in its letter to the court, namely, the fact Defendant Lu was no longer a member of UCH, and therefore, Morrin's claim that he represented UCH was under false pretenses.

44. After hearing from Anejo's counsel, the Court further indicated that Morrin was a licensed Pennsylvania attorney making a representation to the Court, and the Court had to accept such representation for purposes of the eviction proceeding. Morrin then presented the Court with the original formation documents of UCH (when Lu was the sole member) and falsely represented to the Court that "no other operating agreements" were ever created for UCH (ignoring the existence of the 2019 Operating Agreement), and that Anejo was merely a manager of the Anejo Philadelphia restaurant for him, and

that Chung was a business partner in other endeavors.

45. Morrin failed to explain to the Court that for nearly six years, the Parties operated Anejo Philadelphia in accordance with the Operating Agreement, that countless emails were sent referencing provisions of the Operating Agreement over that time period, and that all financial issues were resolved during that time in accordance with the Operating Agreement provisions.

46. With no resolution in sight, the Philadelphia Municipal Court proceeding was continued until May 6, 2025.

47. In the days that followed the April 8th hearing, Defendant Lu and Morrin sent emails to the Arbitration Coordinator, contending to represent UCH, and seeking access to UCH's portal to the Arbitration, despite being the named Respondent in the Arbitration. The Arbitration coordinator requested a court order indicating Morrin's representation of UCH, which Morrin was never able to obtain. Morrin indicated he would obtain the transcript from April 8th hearing and provide that to the Arbitration coordinator. He never submitted such transcript. Anejo contends it is because the transcript reflected Municipal Court Judge stating that he could not rule on the ownership issue, but merely accepted Morrin's petition on behalf of UCH for purposes of the eviction proceeding.

48. During this time, Anejo's counsel and landlord's counsel agreed that in light of Lu's actions at the April 8th hearing, the prudent course was to allow the landlord to move forward with formal eviction of UCH from the premises at the continued May 6th hearing, obtain judgment for the personal guarantee against Lu and Chung, and then the landlord and Anejo could commence discussions regarding a new lease thereafter. Anejo agreed to those order of events.

49. Every year, Anejo Philadelphia's biggest day, revenue-wise, was Cinco de Mayo (May 5th), as it is for most Mexican restaurants. On average, Anejo Philadelphia did approximately $20,000 in sales on Cinco de Mayo. As such, Anejo Philadelphia prepared for such a busy day by acquiring significantly more food supply and alcohol supply than any other day of the year.

50. Shortly before Cinco de Mayo, Lu's counsel sent Anejo a demand that if Anejo did not "buy out" Lu, they would move forward with asking the PLCB to put the Liquor License in a "safekeeping" status, whereby no liquor could be sold thereunder. *See Exhibit K.* Lu's threats were an attempt at extorting more money from UCH or risking having to lose out on liquor sales on Cinco de Mayo. Anejo refused to respond to such extortion attempt, and it is unknown if Lu ever attempted to put the Liquor License into safekeeping at that time.

51. On the morning of May 5, 2025, before Anejo Philadelphia's staff arrived for the day, Defendant Lu arrived at the restaurant and brought a locksmith to break into the lock doors and change the locks on the restaurant.

52. When the staff arrived, Lu informed them that he would be there all day. Anejo Philadelphia's manager told Lu he was not allowed on the premises and demanded that he leave. Defendant Lu refused.

53. Management then called the Philadelphia Police Department to remove Defendant Lu from the premises. Upon arrival, Defendant Lu showed the officers a copy of Lease showing his name as a personal guarantor. The manager showed the officers copies of the Operating Agreement and the Arbitration Settlement, showing Lu had no remaining interests in UCH. However, the police officers stated that this dispute was a civil one,

and that they could not intervene.

54. Once the officers left, Lu proceeded to log into the point-of-sale (POS) terminal with a different account than the operational account for UCH that was set up after NEWCO, LLC was removed from the entity. Essentially, while operating under this different account, all funds received that day would go into Lu's personal bank account.

55. Defendant Lu then proceeded to threaten and intimidate the staff verbally. Feeling unsafe, the Anejo Philadelphia manager and staff, decided to leave and close the restaurant for the day. Email notices were sent to nearly 100 table reservations that the restaurant would be closed.

56. After all staff had left, Defendant Lu remained in the restaurant, and proceeded to bring in his own set of staff to run the restaurant for the day.

57. Upon information and belief, Lu and his personal staff ran the Anejo Philadelphia restaurant on its busiest day of the year, and personally retained all food and liquor sales for the day. Based on prior year performances, it is estimated that Defendant Lu stole approximately $20,000 in total sales from UCH that day.

58. Not wanting Lu to return to the premises uninvited to cause more damage, Anejo hired a locksmith that evening to again change the locks to keep Lu or any other unauthorized persons out.

59. However, the following morning, on May 6, 2025, Defendant Lu showed up the Anejo Philadelphia restaurant with moving vans and several other individuals, including a locksmith to again change the locks on the doors.

60. Defendant Lu unlawfully entered the premises again and removed almost every item of value, including food, liquor, POS systems, speakers, dinnerware, linens, and more,

14

from the restaurant and loaded it into his van. Defendant's Lu's colleagues were assisting him in this theft. This was witnessed by one of Anejo Philadelphia's chefs who lived nearby.

61. When Anejo went to survey the damages soon thereafter, there was nothing of meaningful value remaining in the restaurant space. Defendant Lu had stolen approximately $200,000 in the form of retail value of food and liquor, and approximately $20,000 in additional assets of the restaurant.

62. Anejo's counsel contacted landlord's counsel and notified them that in light of Lu's theft of all of the assets of the restaurant, Anejo had no further interest in continuing the operation of the Anejo Philadelphia restaurant. On May 6, 2025, Anejo Philadelphia closed forever. Anejo Philadelphia had averaged approximately $200,000 per year in profits since it opened its doors.

63. Now having lost their restaurant due to Defendant Lu's willful and criminal actions, on May 9, 2025, Anejo's counsel sent a letter to Morrin and Lu articulating all of Lu's wrongdoings, and the legally incorrect positions Morrin and Lu had taken to date. *See Exhibit L.*

64. No response from Lu or Morrin has been received since that letter.

## FIRST CAUSE OF ACTION

## CIVIL THEFT (EMBEZZLEMENT)

66. Paragraphs 1 through 65 are realleged and incorporated herein by reference.

67. Defendant Lu knowingly and intentionally removed $26,550 from the UCH operating account, in equal installments of $6,637.40. Defendant Lu falsely represented that

such funds were to buy out an Investor, to which Anejo subsequently agreed was acceptable.

68. Defendant Lu failed to pay the Investor such funds.

69. After being told by the Investor that he no longer wished to be bought out, Lu retained the funds for his own personal benefit.

70. On multiple occasions Lu indicated that he would return the funds, but after several months, he had still failed to do so.

71. Defendant's removal of $26,550 from the UCH operating account was the catalyst and proximate cause that led to failure to pay rent, and the eventual eviction of UCH pursuant to the Lease.

72. Defendant Lu's actions constitute the intentional and deliberate taking of property to which he had no lawful right, amounting to Civil Theft through embezzlement pursuant to Pennsylvania common law.

73. As a result of Defendants' actions, Anejo has suffered injury, including irreparable injury, and other damages as set forth herein.

**SECOND CAUSE OF ACTION**

**CIVIL THEFT (MISAPPROPRIATION OF LIQUOR LICENSE)**

74. Paragraphs 1 through 73 are realleged and incorporated herein by reference.

75. Defendant Lu, without the knowledge or consent of Anejo, and in violation of the terms of the Operating Agreement, modified the Liquor License to allow for off-site catering sales of liquor.

76. Defendant Lu knew Anejo Philadelphia did not offer off-site catering liquor sales.

77.  Defendant Lu, through deceit and misrepresentation, utilized the UCH Liquor License for the benefit of his other restaurants, unaffiliated with Anejo Philadelphia or UCH.

78.  Upon information and belief, Defendant Lu sold several hundreds of thousands of dollars worth of liquor under the UCH Liquor License, and personally retained those funds.

79.  Defendant Lu's actions constitute the intentional and deliberate taking of property to which he had no lawful right, amounting to Civil Theft through misappropriation pursuant to Pennsylvania common law.

80.  As a result of Defendants' actions, Anejo has suffered injury, including irreparable injury, and other damages as set forth herein.

**THIRD CAUSE OF ACTION**

**CIVIL THEFT (FRAUDULENT SALE OF EQUITY)**

81.  Paragraphs 1 through 80 are realleged and incorporated herein by reference.

82.  As set forth above in particularity, Defendant Lu negotiated and obtained $100,000 in payments from the Investors in exchange for ownership interests in UCH.

83.  Defendant Lu never obtained Anejo's consent to admit the Investors as members of UCH, as required in the Operating Agreement.

84.  Defendant Lu also never provided the Investor's $100,000 payment to UCH.  Upon information and belief, Defendant Lu retained such funds personally.  Such Investor funds would have likely remediated the 2024 financial shortfall leading the eviction of

the restaurant.

85. Until the restaurant closed in May 2025, the Investors believed they had invested properly in UCH.

86. Lu's failure to properly seek admission of the Investors to UCH via the 2019 Operating Agreement, and his failure to put the Investor's funds in the UCH operating account are tantamount to Civil Theft through fraud pursuant to Pennsylvania common law.

87. As a result of Defendants' actions, Anejo has suffered injury, including irreparable injury, and other damages as set forth herein.

**FOURTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201**

**(VALIDITY OF THE OPERATING AGREEMENT)**

88. Paragraphs 1 through 87 are realleged and incorporated herein by reference.

89. On multiple occasions since the first notice of material breach was sent to Defendant Lu, on behalf of NEWCO, LLC, on October 30, 2024, Defendant Lu has taken the position that the 2019 Operating Agreement was invalid due to NEWCO, LLC never being formally created as an entity.

90. Pennsylvania law provides that a "Fictitious Name" is any "name assumed by a general partnership, syndicate, joint adventureship or similar combination or group of persons." *See 54 Pa.C.S § 301*. Moreover, the Pennsylvania legislature codified that agreements

signed by a party using an unregistered Fictitious Name are perfectly valid. *See 54 Pa.C.S § 331* ("The failure by itself of an entity to register a fictitious name as required by this chapter shall not impair the validity of any contract or act of the entity using the fictitious name.")

91. "NEWCO" is the assumed fictitious name by which the partnership of John Chung and Tim Lu chose to call themselves in the Operating Agreement.

92. In addition to the legally binding nature of a Fictious Name, both Anejo and NEWCO respected the terms of the Operating Agreement for all financial matters, including tax and profit distributions, and many emails were sent acknowledging the same.

93. Defendant Lu's first challenge to the validity of the Operating Agreement was after his partner in NEWCO, John Chung, retained counsel to represent NEWCO in the Arbitration, and Chung and his counsel elected to settle the Arbitration by way of the Arbitration Settlement, whereby NEWCO surrendered its interests in UCH to avoid the likely judgment against NEWCO in the Arbitration and the significant costs and fee shifting that would have come as a result.

94. As such, Plaintiff Anejo hereby seeks a Declaratory Judgment that the 2019 Operating Agreement was and is valid against all signatories thereto.

## FIFTH CAUSE OF ACTION

## BREACH OF CONTRACT (OPERATING AGREEMENT)

95. Paragraphs 1 through 94 are realleged and incorporated herein by reference.

96. Whereas the Operating Agreement is valid, as set forth above, all of its provisions remain valid.

97. Section 6.2 of the Operating Agreement states:

*Capital Shortage . In the event any additional funds in excess of the Capital Contributions are required as reasonably determined by the Manager ("Additional Capital "), only the Founders and the Investors shall be required to make such Additional Capital contributions and the Service Provider shall not be required to make any such Additional Capital contributions.*

98. On January 7, a Capital Call letter was sent to NEWCO, LLC as "Founders" within he Operating Agreement, seeking $30,000 to cure the deficiencies by Defendant Lu's theft of $26,550 and the delinquency with the landlord.

99. No funds were ever paid in accordance with the Capital Call in violation of Section 6.2 of the Operating Agreement.

100. Moreover, Lu's embezzlement of $26,000 and his use of the Liquor License for personal gain is a violation of Section 4.4 of the Operating Agreement, governing the standard of care for a Manager.

101. Accordingly, Lu's actions as set forth herein constitute a breach of the Operating Agreement.

102. As a result of Defendants' actions, Anejo has suffered injury, including irreparable injury, and other damages as set forth herein.

**SXTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201**

**(VALIDITY OF THE ARBITRATION SETTLEMENT)**

103. Paragraphs 1 through 102 are realleged and incorporated herein by reference.

104. Anejo pursued the Arbitration in accordance with Section 11.7 of the Operating Agreement.

105. While NEWCO originally failed to respond formally within the Arbitration itself, NEWCO partner John Chung retained counsel on behalf of NEWCO, and entered into

settlement discussions.

106. Upon information and belief, Chung recognized that Tim Lu's actions were more than sufficient to warrant NEWCO's removal from UCH, in accordance with Section 4.4, and because the arbitration provision of the Operating Agreement provided for cost and fee shifting, Chung and his counsel negotiated a settlement whereby NEWCO was not liable for any financial obligation to Anejo, in exchange for surrendering any ownership interests in UCH.

107. Anejo relied upon the fact Chung is listed as a Founder alongside Defendant Lu in the Operating Agreement, and that both men are listed as partners in NEWCO, LLC in the Operating Agreement.

108. Anejo had no knowledge of the arrangement or understanding between Defendant Lu and Chung under the NEWCO entity.

109. Anejo further relied upon the fact Chung retained counsel on behalf of NEWCO to negotiate the Arbitration Settlement.

110. Anejo further relied upon the executed Arbitration Settlement in its conversations with the landlord, in its efforts to keep Anejo Philadelphia operational in that location through a new or modified lease.

111. Defendant Lu has taken the position that Chung could not bind him to any such agreement, and that the Arbitration Settlement is thereby invalid.

112. As such, Plaintiff Anejo hereby seeks a Declaratory Judgment that the Arbitration Settlement was and is valid, and enforceable against all signatories thereto, particularly the fictitious entity NEWCO.

## SEVENTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

## (LEASE)

113.  Paragraphs 1 through 112 are realleged and incorporated herein by reference.

114.  Despite NEWCO's removal from UCH via the Arbitration Settlement, Defendant Lu filed a petition on behalf of UCH in the eviction proceedings in Philadelphia Municipal Court.

115.  Lu's counsel, William Morrin, was notified of the history of the Parties and that Lu had been removed from UCH, and was requested to withdraw such petition as it was interfering with Anejo's ability to save the UCH Lease with the landlord.

116.  Defendant Lu and Morrin rejected any premise that Anejo was ever a member of UCH, that the Operating Agreement was inherently invalid and therefore that Arbitration Settlement was invalid. Defendant Lu and Morrin refused to accept that Anejo was the only remaining member of UCH.

117.  As set forth above, Lu and his counsel willfully misrepresented the factual history of UCH to the Philadelphia Municipal Court, claiming the original formation documents in 2017 were the only documents the company has ever had, and that Lu was always the sole member of the entity.

118.  Not wanting to get involved in such a mess, the landlord notified Anejo that it would not entertain curing the deficiencies in the existing lease while Defendant Lu continued his petition and forced the landlord to spend money on counsel in court.

119.  At the April 8th court hearing, landlord's counsel notified Defendant Lu and Morrin that their actions were directly impacting Anejo (as sole member of UCH) and its

22

ability to cure the breaches of the existing lease. Landlord's counsel also notified Lu and Morrin that if they stopped their interference, and withdrew their petition, Landlord would not pursue the eviction and personal guarantee judgment of nearly $250,000.

120. Despite such knowledge, Defendant Lu intentionally and willfully interfered with the contractual relationship between UCH and the landlord as set forth in the Lease.

121. Lu's interference is believed to be deliberate, in hopes to shut down the Anejo Philadelphia restaurant.

122. As a result of Defendants' actions, Anejo has suffered injury, including irreparable injury, and other damages as set forth herein.

## EIGHTH CAUSE OF ACTION

### TRESSPASS

123. Paragraphs 1 through 122 are realleged and incorporated herein by reference.

124. On May 5, 2025, Defendant Lu, with the help of a locksmith, broke into and unlawfully entered, the Anejo Philadelphia restaurant.

125. Upon arrival, the Anejo Philadelphia manager notified Defendant Lu that he would have to leave, and Defendant Lu refused to do so.

126. Despite police being unwilling to take any action, referring to the issue as a civil matter, Defendant Lu broke the lock on the restaurant door, entered into the restaurant during off hours without permission, and remained in the premises after being asked to leave.

127. While unlawfully on the premises, Defendant Lu caused harm to the restaurant and its employees, through intimidation of the staff, prompting Anejo Philadelphia to close for

the day, on the busiest day of the year, as well as other actions as set forth hereinabove.

128.    As a result of Defendants' actions, Anejo has suffered injury, including irreparable injury, and other damages as set forth herein.

## NINTH CAUSE OF ACTION

### CIVIL THEFT (EMBEZZLEMENT OF LOAN FUNDS)

129.    Paragraphs 1 through 128 are realleged and incorporated herein by reference.

130.    Defendant Lu's removal of $26,550 in $6,637.40 increments was done under the false pretenses of buying out an Investor.

131.    Months after Anejo learned Lu never intended to buy out the Investor, or return the funds to UCH, Anejo saw an attempted bank withdrawal for the same increment amount from the old UCH operational account (note: the same account from which the $26,550 was taken).

132.    The attempted withdrawal was from Pirs Capital.

133.    Anejo contacted Pirs Capital as managing member of UCH, and inquired about the withdrawal, at which time Anejo was informed that it was an attempted auto-payment for a loan taken out by Defendant Lu on UCH.

134.    UCH never received the loan funds that Defendant Lu took out on its credit.

135.    Defendant Lu's actions constitute the intentional and deliberate taking of property to which he had no lawful right, amounting to Civil Theft through embezzlement pursuant to Pennsylvania common law.

136.    As a result of Defendants' actions, Anejo, as sole remaining member of UCH, has suffered injury, including irreparable injury, and other damages as set forth herein.

## TENTH CAUSE OF ACTION

## CIVIL THEFT (EMBEZZLEMENT OF SALES REVENUE)

137. Paragraphs 1 through 136 are realleged and incorporated herein by reference.

138. On Cinco de Mayo, Defendant Lu trespassed into Anejo Philadelphia, and changed the login account on the Point-of-Sale systems, thereby directly all credit card sales received that day to be redirected to his personal account.

139. Cinco de Mayo traditionally brought in approximately $20,000 in gross sales each year.

140. UCH received no sales revenue from all the business transacted on May 5, 2025 due to such funds being diverted to Defendant Lu's personal accounts.

141. Defendant Lu's actions constitute the intentional and deliberate taking of property to which he had no lawful right, amounting to Civil Theft through embezzlement pursuant to Pennsylvania common law.

142. As a result of Defendants' actions, Anejo, as sole remaining member of UCH, has suffered injury, including irreparable injury, and other damages as set forth herein.

## ELEVENTH CAUSE OF ACTION

## CIVIL THEFT (RESTAURANT PROPERTY)

143. Paragraphs 1 through 142 are realleged and incorporated herein by reference.

144. In the early morning of May 6, 2025, Defendant Lu arrived at Anejo Philadelphia with a locksmith, several colleagues, and a moving van.

145. After having the locksmith break the lock to the restaurant, Defendant Lu and his colleagues began removing all valuable assets on the property and loading it into his moving van.

146. Defendant Lu removed approximately $200,000 in retail value worth of food and alcohol, and approximately $20,000 of other restaurant assets, which included the POS systems, the dinnerware, the linens, music speakers, and a list of many other things. By the time Defendant Lu left, only the tables and chairs, and a few other items remained.

147. Defendant Lu's actions are the direct and proximate cause of Anejo Philadelphia deciding to close its doors forever.

147. Defendant Lu's actions constitute the intentional and deliberate taking of property to which he had no lawful right, amounting to Civil Theft pursuant to Pennsylvania common law.

148. As a result of Defendants' actions, Anejo, as sole remaining member of UCH, has suffered injury, including irreparable injury, and other damages as set forth herein.

**TWELFTH CAUSE OF ACTION**

**BREACH OF CONTRACT (MANAGEMENT AGREEMENT)**

149. Paragraphs 1 through 148 are realleged and incorporated herein by reference.

150. The Management Agreement provided that Anejo had exclusive discretion over the day-to-day operation of the Anejo Philadelphia restaurant, including over hiring decisions, structure of the menu, pricing, management, and general operation of the restaurant.

151. Defendant Lu had no involvement over the operation of the Anejo Philadelphia restaurant, in accordance with the Management Agreement.

152. On May 5, 2025, Defendant Lu entered the restaurant and took over operation thereof,

including modifying the POS systems to redirect funds to his personal account. Defendant Lu further intimidated the staff, constructively forcing them to leave for the day, and Defendant Lu proceeded to bring in his own staff and take over the kitchen.

153. All of Defendant Lu's actions on that day, in addition to the other causes of action herein, constitute a breach of the Management Agreement, namely the exclusive rights of Anejo to manage the restaurant accordingly.

154. As a result of Defendants' actions, Anejo, as sole remaining member of UCH, has suffered injury, including irreparable injury, and other damages as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant Lu as follows:

A.    an award of damages for the acts of Civil Theft by embezzlement alleged herein, including the amount of funds unlawfully taken by Defendant Lu;

B.    an award of damages for the acts of Civil Theft by misappropriation alleged herein, including a fair market value for the property owned by UCH, and used by Defendant Lu for personal gain;

C.    an award of damages for the acts of Civil Theft through fraudulent sale of equity in UCH, as alleged herein, including the amount of funds unlawfully taken by Defendant Lu for such purported equity sales;

D.    an award of damages for Defendant Lu's breaches of contract set forth herein, such amounts to be determined at trial;

E.    an award of damages for Defendant Lu's acts of trespass alleged herein, such amounts to be determined at trial;

F.    an award of damages for Defendant's tortious interference with contractual relationship

as alleged herein, such amounts to be determined at trial;

G.      an award inclusive of any actual damages suffered by Plaintiff as a result of Defendants' liability stated hereinabove, including arising out of Defendants' liability in Counts I – XII, and other Counts that may be added at a later date once additional information is obtained;

H.      an award of all damages incurred, directly or indirectly, as a result of Defendants' unlawful acts set forth herein, said damages to be trebled at the discretion of the Court;

I.      a determination by the Court that Defendants' unlawful actions set forth herein are exceptional, warranting an award of damages to Plaintiffs for all reasonable attorney's fees incurred by Plaintiffs;

J.      an award of prejudgment and post-judgment interest and costs of suit;

K.      an award of punitive damages in an amount to be determined by the Court, but not less than $250,000.00, for Defendant's deliberate and willful acts;

L.      an award of actual and compensatory damages in an amount not presently known, but to be computed during the pendency of this action; and

M.      an award of any such other and further relief as this Court deems just and equitable.


By:     *s/ Jon Fallon*
        Jon Fallon, Esquire
        Fallon IP, LLC
        317 Morris Avenue
        Mountain Lakes, NJ 07046
        508.735.1448 (DIRECT)
        fallon@fallonip.com (EMAIL)
        *Attorney for Plaintiff*
        *Pro Hac Vice Admission Pending*

Date: August 12, 2026

By:      *s/ Shawn D. Edwards*
Shawn D. Edwards, Esquire
Maselli Mills & Fornal, P.C.
The Stocking Works
301 S. State Street, Suite N201
Newtown, PA 18940
Ph: 267.914.7400
*sedwards@masellilaw.com*
*Attorneys for Plaintiff*

Date: August 12, 2026

**<u>REQUEST FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial of this action by jury.


By:     *s/ Jon Fallon*
          Jon Fallon, Esquire
          Fallon IP, LLC
          317 Morris Avenue
          Mountain Lakes, NJ 07046
          508.735.1448 (DIRECT)
          fallon@fallonip.com (EMAIL)
          *Attorney for Plaintiff*
          *Pro Hac Vice Admission Pending*


Date: August 12, 2026


By:     *s/ Shawn D. Edwards*
          Shawn D. Edwards, Esquire
          Maselli Mills & Fornal, P.C.
          The Stocking Works
          301 S. State Street, Suite N201
          Newtown, PA 18940
          Ph: 267.914.7400
          *sedwards@masellilaw.com*
          *Attorneys for Plaintiff*


Date: August 12, 2026